**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Ronald C. SMITH, M.D., Robert Miltimore and Donald F. Mitchell, Defendants-Appellees.**

No. 83–5200.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1984.

Decided Aug. 13, 1984.

Richard R. Romero, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellant.

Mark Heaney, Richard D. Burda, Los Angeles, Cal., for defendants-appellees.

Before WALLACE, TANG and SKOPIL, Circuit Judges.

TANG, Circuit Judge:

The government appeals the dismissal of an indictment charging the defendants with nine counts of causing false statements to be made to the government and with five counts of failure to maintain accurate drug testing records. The following issues are raised in this appeal: First, whether a federal agency must receive a false statement in order to trigger the statute of limitations for a violation of 18 U.S.C. § 1001; and second, whether 21 U.S.C. §§ 355(i) and 331(e) in conjunction with 21 C.F.R. § 312.1 make it a crime for a clinical investigator to maintain inadequate or inaccurate records. We affirm.

I

Ronald C. Smith, M.D., maintained medical research facilities in southern California and employed Robert Miltimore and Donald F. Mitchell as researchers. They were engaged by certain pharmaceutical companies to study the safety and efficacy of particular investigational drugs when used on human beings. On April 19, 1983, a grand jury returned a fourteen count indictment against Smith, Miltimore and Mitchell. The first nine counts charged the defendants with causing the submission of false statements to the government in violation of 18 U.S.C. §§ 1001 [1] and 2(b).[2] Specifically, the

---

**1.** 1001. Statements or entries generally
Whoever, in any matter within the jurisdiction or any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document

indictment alleged that the defendants had caused the Sterling-Winthrop pharmaceutical company to submit to the Food and Drug Administration reports indicating that certain individuals had improved or had shown no reaction after taking an experimental drug when these individuals had not actually participated in the drug testing experiments. The last five counts of the indictment charged the defendants with failure to maintain accurate drug testing records in violation of 21 U.S.C. §§ 331(e), 333(b) and 355(i). Specifically, the indictment alleged that the defendants had failed to maintain accurate records by placing falsified and fraudulent data, including false consent forms, in patient files.

The district court dismissed the first nine counts, concluding that they were barred by the five-year statute of limitations, 18 U.S.C. § 3282. It also dismissed the last five counts of the indictment, concluding that the statute requiring the maintenance of accurate records applied only to manufacturers and sponsors of research and did not apply to the clinical investigators.

## II

The government contends that the statute of limitations does not bar the first nine counts of the indictment which charge the defendants with causing the submission of false statements to the government. Relying on 18 U.S.C. § 2(b), which makes a person liable for causing another to commit crimes against the United States, the government argues that the defendants are liable for causing Sterling-Winthrop to submit false statements to the government by providing false information to Sterling-Winthrop for submission to the FDA. It is not necessary, however, to address the merits of the government's theory of substantive liability under 18 U.S.C. § 2(b), because even if we accepted it, the five-year statute of limitations would still bar the action.

The statute of limitations begins to run when the crime is complete. *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). A crime is complete when each element of the crime has occurred. *United States v. Drebin*, 557 F.2d 1316, 1332 (9th Cir.1977). The government contends that the crime was complete when the FDA received a written report from Sterling-Winthrop concerning the defendants' research on April 20, 1978. The report had been mailed to the FDA on April 14, 1978. The government's contention that the April 19, 1983, indictment fell within the five-year statute of limitations hinges on a determination that the offense is not complete until the government has actually received the allegedly false statements. The statute, however, has no such requirement. The offense is complete when the false statement is submitted. There is no requirement that the government actually receive or rely on the statement before the offense is completed. *United States v. Balk*, 706 F.2d 1056, 1059 (9th Cir.1983); *United States v. Rose*, 570 F.2d 1358, 1363 (9th Cir.1978). Thus, even under the government's liability theory, the statute of limitations began to run when the report was mailed on April 14, 1978. Because the indictment issued more than five years after the completion of the offense, the district court correctly concluded that the statute of limitations barred prosecution of the nine counts charging submission of false statements to the government.

The government cites cases in which venue was deemed proper in districts where the false statements were received. *Haddad v. United States*, 349 F.2d 511 (9th Cir.1965); *United States v. Candella*, 487 F.2d 1223 (2d Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974). Because venue is proper where the crime is completed, 18 U.S.C. § 3237(a), the

knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**2.** 2. Principals

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

government contends that these cases implicitly suggest that a violation of 18 U.S.C. § 1001 is not complete until the false statement is received by the federal agency. The government's effort to redefine the essential elements of the substantive offense by resorting to venue cases is unpersuasive. First, the theory goes against the weight of authority holding that a section 1001 violation can be complete without actual receipt of the statement by the relevant federal agency. *United States v. Balk*, 706 F.2d at 1059; *United States v. Hooper*, 596 F.2d 219, 223 (7th Cir.1979); *United States v. Herberman*, 583 F.2d 222, 227 (5th Cir.1978). Second, even the case law allowing venue in districts where the statements were received indicates that the perpetrator's actions constitute a complete and indictable offense upon preparation of the false statement and its application to a matter within the jurisdiction of a federal agency. The cases do not suggest that actual receipt by the relevant agency is an essential element of the offense. *United States v. Wuagneux*, 683 F.2d 1343, 1356 (11th Cir.1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *United States v. Candella*, 487 F.2d at 1228.

### III

■ The government also contends that the last five counts of the indictment charging the defendants with failure to maintain accurate drug testing records were improperly dismissed because the district court incorrectly concluded that 21 U.S.C. § 355(i)[3] does not apply to clinical investigators. The failure to maintain

records as required by section 355(i) is a prohibited act and may lead to imprisonment, a fine or both. 21 U.S.C. §§ 331(e), 333. While section 355(i) expressly authorizes regulations requiring manufacturers or the sponsors of clinical investigations to maintain and submit drug testing reports to the FDA, it does not expressly call for the imposition of such a requirement on clinical researchers. The government argues, however, that section 355(i) should be interpreted to apply to clinical investigators because regulations promulgated pursuant to section 355 require sponsors to obtain from investigators a form stating that the investigator will maintain accurate drug testing records and case histories. 21 C.F.R. §§ 312.1(a)(12) and 312.1(a)(13). Such regulations, the government contends, provide sufficient notice to investigators that failure to maintain accurate records would constitute a statutory offense. The district court correctly determined, however, that the statute and regulations cannot be read to attach criminal liability to the clinical investigators.

■ Although the statute expressly authorizes regulations which impose affirmative duties on manufacturers and the sponsors of clinical investigations, we are reluctant to read the statute as authorizing criminal penalties for the violation of any regulation promulgated pursuant to the statute's *general* authorizing language. In creating the obligation to maintain drug testing records, Congress expressly imposed the burden on manufacturers and sponsors. § 355(i)(3). The government asks that we extend the statutory obliga-

---

**3.** § 355

(i) The Secretary shall promulgate regulations for exempting from the operation of the foregoing subsections of this section drugs intended solely for investigational use by experts qualified by scientific training and experience to investigate the safety and effectiveness of drugs. Such regulations may, within the discretion of the Secretary, among other conditions relating to the protection of the public health, provide for conditioning such exemption upon—

(1) the submission to the Secretary, before any clinical testing of a new drug is undertaken, of reports, by the manufacturer or the sponsor of the investigation of such drug, of

preclinical tests (including tests on animals) of such drug adequate to justify the proposed clinical testing;

. . . . .

(3) the establishment and maintenance of such records, and the making of such reports to the Secretary, by the manufacturer or the sponsor of the investigation of such drug, of data (including but not limited to analytical reports by investigators) obtained as the result of such investigational use of such drug, as the Secretary finds will enable him to evaluate the safety and effectiveness of such drug in the event of the filing of an application pursuant to subsection (b) of this section.

tion to include clinical investigators pursuant to the statute's general regulatory authority which allows the Secretary to establish "other conditions relating to the protection of public health" before exempting manufacturers from the statute's basic drug approval application requirements. § 355(i). Such general authorizing language, however, is insufficient legislative guidance for the issuance of regulations which, if violated, would furnish the basis for criminal liability. Executive agencies have the authority to establish regulations which are enforced by criminal penalties only when Congress has provided "sufficient guidelines and standards for the exercise of the authority." *United States v. Davis*, 564 F.2d 840, 844 (9th Cir.1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 733, 54 L.Ed.2d 760 (1977); *United States v. Suquet*, 551 F.Supp. 1194, 1198 (N.D.Ill.1982); *United States v. Piatti*, 416 F.Supp. 1202, 1205 (E.D.N.Y.1976).

Moreover, even if Congress had provided standards for extending the recordkeeping requirement to investigators by regulation, the regulatory language falls short of imposing an explicit affirmative duty on the investigators to maintain accurate records.[4] The regulations do not make it clear that the investigator violates the statute by failing to submit accurate test data to the sponsor. Absent such a clear articulation of duty, we are not prepared to fasten criminal liability to the investigator who fails to fulfill his or her obligation to the sponsor.

Generally, when a criminal statute is ambiguous, courts are reluctant to find criminal liability for those activities which are only questionably within its ambit. This principle of lenity is rooted in two major concerns. First, it ensures that there is fair warning "of what the law intends to do if a certain line is passed." *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971), quoting *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct.

340, 341, 75 L.Ed. 816 (1931). Second, because of the serious nature of criminal sanctions "and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity." *Id.* Adhering to the principle embodying these concerns, we are unwilling to find criminal liability here.

We recognize that the general rule requiring strict construction of criminal statutes is somewhat tempered in the context of public health and other remedial legislation. Such temperance is justified to ensure that literalism is not used to undermine the purposes and protections of legislation which affects "phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection." *United States v. Dotterweich*, 320 U.S. 277, 280, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943) (restricting scope of statute conferring immunity from adulteration and misbranding liability). *See also United States v. An Article of Drug, etc.*, 394 U.S. 784, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1969) (antibiotic sensitivity disc within definition of "drug" under Food, Drug and Cosmetic Act). Our concern for the protective purposes of remedial legislation, however, does not vest this court with a license to rewrite the statute, for "our problem is to construe what Congress has written. After all, Congress expresses its purpose by words. It is for us to ascertain—neither to add nor to subtract, neither to delete nor to distort." *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596, 71 S.Ct. 515, 518, 95 L.Ed. 566 (1951) (misbranding prohibition not applicable to product labeled "imitation" jam). "Our compass is not to read a statute to reach what we perceive—or even what we think a reasonable person should perceive—is a 'sensible result'; Congress must be taken at its word unless we are to assume the role of statute revisers." *Bifulco v. United States*, 447 U.S. 381, 401, 100 S.Ct. 2247,

---

4. The regulations, before describing the forms to be used, provide that "[t]he sponsor shall obtain from each investigator involved in clini-

cal pharmacology a signed statement in the following form ..." 21 C.F.R. § 312.1(a)(12) and (13).

2259, 65 L.Ed.2d 205 (1980) (Burger, C.J., concurring).

The statute and regulations at issue here do not impose a clear duty on investigators to maintain accurate records. They only impose affirmative duties on drug manufacturers and the sponsors of clinical investigations. If the FDA discovers that an investigator has falsified information in forms submitted to the sponsor, the FDA, pursuant to the regulations, may conduct an administrative hearing and revoke the investigator's entitlement to work with investigational drugs. 21 C.F.R. § 312.1(c). Under these circumstances, we cannot fairly read the pertinent statute and regulations to attach criminal liability to these defendants.

Moreover, we note that the Senate Report accompanying the adoption of § 355 indicates that Congress was primarily concerned with the lack of adequate information from drug *manufacturers* regarding the use of experimental drugs. The proposed legislation was designed to "permit the Secretary to issue regulations requiring that *manufacturers* keep records and make reports of such investigations and clinical experience." S.Rep. No. 1744, *reprinted in* 1962 U.S.Code Cong. & Ad. News 2884, 2891 (emphasis added). The legislative history does not indicate that Congress was attempting to impose affirmative responsibilities on investigators working at the manufacturer's direction.

IV

Because the statute of limitations for alleged violations of 18 U.S.C. § 1001 commenced no later than the date of mailing, we affirm the district court's holding that the statute of limitations bars prosecution of the first nine counts of the indictment. The district court also properly dismissed the last five counts of the indictment which charged the defendants with failure to maintain adequate records. Congress did not provide sufficient guidance for the promulgation of regulations which would subject investigators to criminal liability for noncompliance. Moreover, even if Congress had provided guidelines for such regulations, the regulatory language falls short of justifying the imposition of criminal sanctions for noncompliance.

AFFIRMED.