**Daniel J. SICARD, Plaintiff,**

v.

**CITY OF SIOUX CITY and its Civil Service Commission and Fire Department, Defendants.**

**No. C 94–4005–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

Nov. 27, 1996.

William J. Lane of Sioux City, Iowa, for plaintiff Daniel J. Sicard.

Timothy A. Scherle, Assistant Sioux City Attorney, for defendants City of Sioux City and its Civil Service Commission and Fire Department.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

The Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, is the newest, and consequently, this court finds, the least interpreted, of the weapons Congress has added to the statutory arsenal in the battle against workplace discrimination. In this case, the court is called upon to interpret the meaning of "disability" under the ADA. The analysis of any ADA claim necessarily begins with the question of whether the plaintiff has such a "disability," but the court must here consider a side of the question that courts have only infre-

quently confronted. Specifically, the court must decide if the determination of whether an individual has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual"[1] should be made with or without regard to the availability of mitigating measures, such as medicines or assistive or prosthetic devices, for the individual's impairment. The district courts are split on the issue and this court's own circuit court of appeals, like most others, has not addressed the question. However, one circuit court of appeals appears to embrace the determination of "disability" under the ADA without regard to mitigating measures. In the course of interpreting the statute, the court must consider what weight or deference to give certain interpretive regulations promul-

---

1. 42 U.S.C. § 12102(2).

gated by the Equal Employment Opportunity Commission (EEOC), the body charged by statute with promulgating regulations implementing and interpreting the provisions of the ADA that are applicable to employment situations.[2]

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Daniel J. Sicard filed his complaint in this matter on January 21, 1994, against defendants City of Sioux City, the Sioux City Civil Service Commission, and the Sioux City Fire Department (collectively "the City"), alleging discrimination on the basis of disability in violation of the ADA, 42 U.S.C. § 12101 *et seq.* Sicard was an applicant for a position as a firefighter with the City. Sicard alleges that he was denied that position with the City when he failed to meet certain vision requirements, because he suffers from myopia.

The City answered Sicard's complaint on February 10, 1994, asserting as affirmative defenses that Sicard does not qualify as a person with a disability for the purposes of the ADA; that its vision requirements for the position of firefighter were based on bona fide occupational requirements; and that the City offered Sicard a reasonable accommodation for his condition, radial keratotomy surgery, which he rejected. The City subsequently moved for summary judgment and Sicard resisted the motion. On May 19, 1995, the court granted the City's motion for summary judgement.

However, on May 30, 1995, Sicard filed a motion to alter, amend, reconsider or reverse judgment. On July 17, 1995, following a hearing on Sicard's motion, the court granted the motion and ordered that Sicard would have one hundred twenty days in which to complete discovery. The court further ordered that, upon completion of discovery, the City could renew its motion for summary judgment.

On May 17, 1996, the City did indeed renew its motion for summary judgment, once again asserting that Sicard is not "disabled" within the meaning of the ADA. Specifically, the City argues that Sicard's myopia does not substantially limit any major life activity. Sicard filed a timely resistance to the City's motion for summary judgment in which he asserts that there are genuine issues of material fact precluding summary judgment in this case. Sicard contends that there is a genuine issue of material fact as to whether he is disabled within the meaning of the ADA, because there is a genuine issue of fact as to whether his *uncorrected* vision substantially limits any of his major life activities.

The court held a hearing on the City's renewed motion for summary judgment on October 2, 1996. Sicard was represented at the hearing by counsel William J. Lane of Sioux City, Iowa. The City was represented by Assistant Sioux City Attorney Timothy A. Scherle. At the hearing, the court found that further briefing was warranted on the question of whether the determination of an impairment's impact on an individual's major life activities must be made with or without regard to the availability of mitigating measures. The court therefore ordered the parties to submit supplemental briefs on that question. The parties have filed such supplemental briefs, and the court now deems this matter fully submitted.

## II. FINDINGS OF FACT

For the purposes of this summary judgment motion only, the court finds the following facts:

On November 19, 1991, Sicard applied for the position of firefighter with the City. The position of firefighter with the City is a civil service position. The rules governing the examination process were provided to all applicants, including Sicard, and were publish-

**2.** 42 U.S.C. § 12116. Title II of the ADA, which extends non-discrimination principles to state and local governments and prohibits exclusion of disabled persons from participation in or the denial to disabled persons of the benefits of the services, programs, or activities of a public entity, or other disability discrimination by such a public entity, 42 U.S.C. § 12132, directs the Attorney General to promulgate regulations necessary for its implementation. *See* 42 U.S.C. § 12134(a); *Helen L. v. DiDario,* 46 F.3d 325, 331 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995).

ed in the *Sioux City Journal* on November 18, 1991. The rules required successful applicants to undergo an eye examination.

Sicard had graduated from the Massachusetts Fire Academy, and was, at the time he applied for the firefighter position with the City, employed as a firefighter with the Westwood Fire Department in Westwood, Massachusetts. Sicard successfully completed both the written and oral examinations for the Sioux City position as well as the physical agility tests and was then placed on the conditional list of certified applicants. The conditional list was effective for the period of January 28, 1992 through January 28, 1994. The conditional list states in bold lettering that "[a]ppointment from this list is contingent upon passing an eye exam, physical exam including back x-ray, and drug and alcohol screening."

On July 14, 1992, Sicard was given a conditional appointment as a firefighter with the Sioux City Fire Department. The job offer was contingent on his successful completion of the medical examination and the drug and alcohol screening. On July 23, 1992, Sicard was informed by letter that his eye and medical examination were to take place on August 4, 1992. On August 4, 1992, Sicard had his eyes examined by Dr. Bruce Bedell, an ophthalmologist. The results of the eye examination indicated that Sicard had uncorrected vision of 20–200 in both eyes. Sicard's corrected vision was 20–20 in the right eye, and 20–20 –2 in the left eye.

The City's visual acuity standards for firefighters in place at the time of Sicard's eye examination were as follows:

STANDARD VISUAL ACUITY. Standard visual acuity without correction, less than 20/40 in one eye, and 20/100 in the other eye; and with correction, less than 20/20 in one eye, and 20/40 in the other eye.

Because Sicard did not meet this standard, Sicard was medically disqualified as a candidate for the position of firefighter with the City. A disqualification statement dated August 8, 1992, and signed by Drs. J.S. Burgechtel and Mark Taylor, stated,

Disqualification on the basis of criteria 7.2B, standard visual acuity. Standard visual acuity without correction less than 20/40 in one eye and 20/100 in the other eye. Poor visual acuity without correction can make the person significantly susceptible to injury in a dangerous situation if corrective apparatus is not available.

On September 24, 1992, after two Sioux City Civil Service Commission meetings at which Sicard's eye examination results were discussed, Sicard was offered the opportunity to remain on the conditional eligibility list. The civil service commission would not take any action on his eye examination result, but would instead allow Sicard the option of undergoing, at his own expense, a radial keratotomy procedure on his eyes in order to bring them up to the visual acuity requirements for the position. The record shows that seven candidates for the position of firefighter or police officer with the City have undergone radial keratotomy or other procedures to improve their visual acuity and to qualify them for positions as a police officer or firefighter since August of 1992. The City's offer indicated that any future eye examination Sicard might take would be based on his vision as corrected by the surgery. Sicard declined the offer through his attorney on October 10, 1992, and on November 9, 1992, Sicard's name was removed from the eligibility list.

Sicard has successfully worn soft contact lenses since 1988. His corrected vision with soft contact lenses is 20/20 in each eye. Without correction, Sicard's vision prevents him from performing any of the functions of the position of firefighter. Indeed, there are few jobs Sicard could perform with his uncorrected vision without extensive retraining. Furthermore, without correction, Sicard cannot drive an automobile or read. His uncorrected vision also prevents him from seeing well enough to walk in unfamiliar settings and prevents him from reading street signs. Sicard's uncorrected vision would also prevent him from watching television or movies. Sicard therefore contends that there is at least a genuine issue of material fact as to whether he is disabled within the meaning of the ADA. However, with the accommodation of being permitted to wear soft contact lenses and/or special equipment with corrective lenses, Sicard has been able to perform all

functions of the position of firefighter with the Westwood Fire Department. Sicard contends that his performance with the Westwood Fire Department generates a genuine issue of material fact as to whether, under the ADA, he is a qualified person with a disability entitled to the position of firefighter with the City.

The most current standard for firefighters applicable here, and a standard that has been adopted by fire fighting organizations throughout the United States, is standard 1582, *Standard on Medical Requirements for Fire Fighters,* of the National Fire Protection Association ("N.F.P.A.").[3] Section 3.2.1(a) of N.F.P.A. 1582 pertains to the requirements for far visual acuity. N.F.P.A. 1582 § 3–2.1(a). That provision states the following:

> (a) Far visual acuity. Far visual acuity shall be at least 20/30 binocular corrected with contact lenses or spectacles. Far visual acuity uncorrected shall be at least 20/100 binocular for wearers of hard contract or spectacles. Successful long-term soft contact lens wearers shall not be subject to the uncorrected criterion.

*Id.*[4] The standard contained in N.F.P.A. 1582 updated and revised the medical standards previously found in N.F.P.A. 1001. In revising the visual acuity standard, the committee found that while the acuity standards were justified in the case of hard corrective measures, such as glasses and hard contact lenses, the acuity measures were not justified for long term wearers of soft contact lenses. Although hard contact lenses are susceptible to coming out or getting lost, soft contacts rarely become dislodged and it is virtually impossible to dislodge both lenses simultaneously. Thus, in revising the visual acuity standard, the committee concluded that a person with vision corrected by soft contact lenses was not a threat to his or her own safety or to the safety of others in the performance of a firefighter's job duties. Sicard contends that these facts also generate a genuine issue of material fact as to his qualification for the firefighter job with the City.

## III. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

> (b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

> (c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that*

---

**3.** As the United States Supreme Court has recognized, "[t]he National Fire Protection Association (Association) is a private, voluntary organization with more than 31,500 individual and group members representing industry, labor, academia, insurers, organized medicine, firefighters, and government." *Allied Tube & Conduit Corp. v.*

*Indian Head, Inc.,* 486 U.S. 492, 495, 108 S.Ct. 1931, 1934, 100 L.Ed.2d 497 (1988).

**4.** A copy of N.F.P.A. 1582 was provided to the court as Plaintiff's Exhibit 28.

*the moving party is entitled to judgment as a matter of law.*

Fed.R.Civ.P. 56(b) & (c) (emphasis added); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Reliance Ins. Co. v. Shenandoah South, Inc.,* 81 F.3d 789, 791 (8th Cir.1996); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir. 1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir. 1990); *Wabun–Inini,* 900 F.2d at 1238 (citing Fed.R.Civ.P. 56(c)).[5] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Sicard, and give him the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Rifkin v. McDonnell Douglas Corp.,* 78 F.3d 1277, 1280 (8th Cir.1996); *Marts v. Xerox, Inc.,* 77 F.3d 1109, 1112 (8th Cir.1996); *Munz,* 28 F.3d at 796; *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving party, the City, bears "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). The City is not required by Rule 56 to support its motion with affida-vits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Sicard is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prods., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison,* 28 F.3d at 66.

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue

---

5. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

for trial. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). If Sicard fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then the City is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith*, 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Burk*, 948 F.2d at 492; *Woodsmith*, 904 F.2d at 1247.

The Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). The court reasoned that "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *Johnson*, 931 F.2d at 1244; *accord Webb v.*

*Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford*, 37 F.3d at 1341). However, the Eighth Circuit Court of Appeals has also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)).

With these standards in mind, the court turns to consideration of the City's motion for summary judgment.

## IV. LEGAL ANALYSIS

### (including some further findings of fact)

Sicard's claims are asserted under the employment discrimination provisions of the ADA, 42 U.S.C. § 12101 *et seq.* The critical issue raised by the City is whether Sicard is disabled within the meaning of the ADA. Specifically, the City contends that Sicard's myopia does not "substantially limit" any of his major life activities, because he routinely uses vision correction that allows him to do almost anything. However, the City contends that Sicard, though not a disabled person within the meaning of the ADA, is nonetheless disqualified by his myopia, that is, by his uncorrected vision, from a position as a firefighter with the City. The court must therefore examine the ADA's prohibitions on disability discrimination to determine whether Sicard can assert his claims pursuant to that act.

The Eighth Circuit Court of Appeals recently wrote, "The purpose of the ADA is broad and remedial: It is designed to provide 'a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Webb*, 94 F.3d at 487 (quoting 42 U.S.C. § 12101(b)(1)); *accord Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir.1996)

("The ADA was enacted to provide a national mandate 'for the elimination of discrimination against individuals with disabilities,'" quoting 42 U.S.C. § 12101(b)(1)); *Crowder v. Kitagawa*, 81 F.3d 1480, 1483 (9th Cir.1996) (also quoting § 12101(b)(1) for the purpose of the statute). This court has previously engaged in extensive discussions of the origins of the ADA. *See Muller v. Hotsy Corp.*, 917 F.Supp. 1389, 1402–05 (N.D.Iowa 1996); *Heather K. v. City of Mallard, Iowa*, 887 F.Supp. 1249, 1263–66 (N.D.Iowa 1995); *Hutchinson v. United Parcel Serv., Inc.*, 883 F.Supp. 379, 387–90 (N.D.Iowa 1995); *Fink v. Kitzman*, 881 F.Supp. 1347, 1368–71 (N.D.Iowa 1995). Because the court most recently reiterated this important background to an ADA claim just a few months ago in *Valentine v. American Home Shield Corp.*, 939 F.Supp. 1376, 1388–91 (N.D.Iowa 1996), it will not do so again here. Thus, the court turns directly to the nature of the prohibition on disability discrimination under the ADA.

### A. *"Disability" Under The ADA*

Under the ADA, "disability" is broadly defined to include not only "a physical or mental impairment that substantially limits one or more of the major life activities of [the disabled] individual," but also "ha[ving] a record of such an impairment," or the state of "being regarded as having such an impairment." 42 U.S.C. §§ 12102(2)(A), (B), (C); *Webb*, 94 F.3d at 487 (considering only § 12102(2)(A) in the case before it); *Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1318 (8th Cir.1996); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir. 1995); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir.1995); *Vande Zande*, 44 F.3d at 541; *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995); *Chandler v. City of Dallas*, 2 F.3d 1385, 1391 (5th Cir.1993), *cert. denied*, 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994) ("disability" under ADA means a condition that "substantially limits" major life activity). Thus, Sicard must first show, or generate a genuine issue of material fact as to whether, his myopia "substantially

limits one or more of [his] major life activities."

### 1. *"Substantially limits"*

In seeking further definition of the term "substantially limits" under the ADA, the Eighth Circuit Court of Appeals looked to the regulations implementing the ADA:

[T]he EEOC regulations state that the following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) the nature and severity of the impairment, (ii) its duration or expected duration, and (iii) its actual or expected long-term impact. 29 C.F.R. § 1630.2(j)(2).

*Aucutt*, 85 F.3d at 1319; *accord Cook v. State of R.I. Dep't of Mental Health, Retardation, & Hosps.*, 10 F.3d 17, 25 n. 10 (1st Cir.1993) (finding that EEOC regulations "indicate that the question of whether an impairment is substantially limiting turns on '(1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the [actual or expected] permanent or long-term impact . . . of, or resulting from, the impairment,'" quoting 29 C.F.R. § 1630, App. at 403 (1992)). ADA regulations, as well as ADA interpretive guidance, make clear that temporary, minor injuries do not "substantially limit" a person's major life activities. 29 C.F.R. § 1630.2(j), 29 C.F.R. Pt. 1630 App. § 1630.2(j).

This court has applied this "substantially limits" a "major life activity" requirement in a number of cases under the ADA. *See Muller*, 917 F.Supp. at 1411–12 (considering whether a person with spinal injury that was temporary nonetheless perceived by his employer as having a disability that substantially limited his major life activity of working); *Hutchinson*, 883 F.Supp. at 395–96 (considering whether a person with shoulder and back injuries was substantially limited in any major life activity); *Fink*, 881 F.Supp. at 1376–77 (considering whether a person with carpal tunnel syndrome was substantially limited in a major life activity).

### 2. *"Major life activities"*

The ADA does not define "major life activities," so the Eighth Circuit Court of

Appeals has been guided by the definition provided in 29 C.F.R. § 1630.2 of the EEOC regulations on implementation of Title I of the ADA. *Aucutt,* 85 F.3d at 1319.

As defined in 29 C.F.R. § 1630.2(i), the phrase "major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The regulations further provide that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Rather, a person claiming a disability must show that the impairment "significantly restrict[s] [his or her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Id.; see also Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942–44 (10th Cir.1994) *(Bolton )* (work-related injury preventing employee from performing his job as order selector in grocery warehouse was not substantial limitation in major life activity of working, as required for unlawful discharge claim under ADA, absent evidence showing restriction in ability to perform class of jobs or broad range of jobs in various classes), *cert. denied,* —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995).

*Aucutt,* 85 F.3d at 1319. Similarly, in *Webb,* the Eighth Circuit Court of Appeals, having noted that "work" is a major life activity under the EEOC regulations, 29 C.F.R. § 1630.2(i), concluded that "[a] person is substantially limited in the major life activity of working if she is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.' " *Webb,* 94 F.3d at 487 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Thus, an impairment or condition that affects "only a narrow range of jobs" is not considered as reaching a major life activity nor as substantially limiting one. *See Wooten,* 58 F.3d at 386; *Chandler,* 2 F.3d at 1392 (quoting *Jasany v. United States Postal Serv.,* 755 F.2d 1244, 1249 n. 3

(6th Cir.1985)). However, "[u]nder this broad definition of substantial limitation, an ADA plaintiff need not demonstrate that her impairment restricts her ability to perform all jobs. Rather, as the EEOC's interpretive guide to the Act illustrates, an individual is disabled when her impairment merely prevents performance of a certain class of jobs." *Webb,* 94 F.3d at 487 (citing 29 C.F.R. § 1630.2(j)(3)(ii)). Furthermore, an employer's belief that an employee is unable to perform one task with an adequate safety margin or that an employee can work in positions other than the one formerly occupied despite his impairment does not establish that the employer regards the employee as having a substantial limitation on the employee's ability to work in general. *Chandler,* 2 F.3d at 1392–93.

This court has found certain alleged disabilities did not meet the requirements of substantially limiting the plaintiff in a major life activity. *See Hutchinson,* 883 F.Supp. at 395–96 (back and shoulder injuries were not minor, but were temporary, and any remaining impairment was admittedly only slight, thus plaintiff was not disqualified from a wide range of jobs, and had failed to demonstrate substantial limitations in any other major life activity); *Fink,* 881 F.Supp. at 1376–77 (plaintiff with carpal tunnel syndrome was restricted only in lifting, but was not substantially limited in any other way, and the lifting restriction did not substantially limit any major life activity or even impair plaintiff's job performance); *Schwarz v. Northwest Iowa Community College,* 881 F.Supp. 1323, 1343–45 (N.D.Iowa 1995) (applying Iowa disability discrimination law, the court held that alleged "night blindness," although it impaired the major life activity of seeing, did not limit the plaintiff in any significant way from obtaining satisfactory employment or disqualify her from a wide range of jobs).

Here, the parties dispute whether Sicard's myopia constitutes a disability within the meaning of the ADA. The parties' respective positions turn upon whether Sicard's disability is to be considered with or without regard to the availability of mitigating measures for the impairment, such as medicines or assistive or prosthetic devices. The un-

controverted record before the court indicates that Sicard's uncorrected vision is 20/200 in each eye. In this uncorrected state, Sicard's vision prevents him from performing any of the functions of the firefighter position he seeks with the City. There are also few jobs Sicard could perform with his uncorrected vision without extensive retraining. Clearly, Sicard's uncorrected vision substantially limits the major life activity of working. *See Webb,* 94 F.3d at 487 (a person is substantially limited in the major life activity of working if she is " 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities,'" quoting 29 C.F.R. § 1630.2(j)(3)(i)). Additionally, without correction, Sicard cannot drive an automobile or read. His uncorrected vision also prevents him from seeing well enough to walk in unfamiliar settings or to read street signs. Sicard's uncorrected vision would also prevent him from watching television or movies. Thus, Sicard may be substantially limited in the more general "major life activities" of "seeing" and "walking." 29 C.F.R. § 1630.2(i). However, the City vigorously disputes whether the disability inquiry should be made without consideration of the effects that corrective lenses have on Sicard's vision. It is, again, uncontradicted that Sicard's corrected vision in each eye is equal to or better than normal. Sicard's *corrected* vision does not substantially limit any major life activities.

The authorities cited above do not resolve the question of whether it is Sicard's corrected or uncorrected vision that determines whether he is "disabled" within the meaning of the ADA. Thus, the court's next inquiry is whether the ADA's definition of "disability" means an impairment's impact on an individual's major life activities with or without regard to the availability of mitigating measures for the impairment, such as medicines or assistive or prosthetic devices.

### B. *"Disability" Under The ADA*

### *And Treated Or Untreated Conditions*

The question of whether the ADA requires consideration of treated or untreated

conditions to determine whether a person is "disabled" within the meaning of the Act is addressed by the EEOC'S interpretive guidelines found at 29 C.F.R. Pt. 1630 App. §§ 1630.2(h) and (j). The first of these interpretive guidelines, 29 C.F.R. Pt. 1630 App. § 1630.2(h), states in pertinent part as follows:

> The existence of an impairment is to be determined without regard to mitigating measures such as medicines, or assistive or prosthetic devices.

Likewise, 29 C.F.R. Pt. 1630 App. § 1630.2(j) states, in relevant part, as follows:

> The determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices.

These interpretive guidelines require that "[t]he determination of whether a condition constitutes an impairment, or the extent to which the impairment limits the individual's major life activities must be made without regard to the availability of mitigating measures such as medicines, or assistive or prosthetic devices." *Roth v. Lutheran Gen. Hosp.,* 57 F.3d 1446, 1454 (7th Cir.1995) (citing 29 C.F.R. Pt. 1630 App. §§ 1630.2(h), (j)). The examples given in the interpretive guidelines are particularly instructive:

> For example, an individual with epilepsy would be considered to have an impairment even if the symptoms of the disorder were completely controlled by medicine. Similarly, an individual with hearing loss would be considered to have an impairment even if the condition were correctable through the use of a hearing aid.

29 C.F.R. Pt. 1630 App. § 1630.2(h). The interpretive guidelines also provide this example:

> An individual who uses artificial legs would likewise be substantially limited in the major life activity of walking because the individual is unable to walk without the aid of prosthetic devices. Similarly, a diabetic who without insulin would lapse into a coma would be substantially limited be-

cause the individual cannot perform major life activities without the aid of medication. 29 C.F.R. Pt. 1630 App. § 1630.2(h). Therefore, if the EEOC interpretive guidelines are correct that the disability inquiry should be made without regard to the ameliorative effects of medication or prosthetic devices, Sicard has, at a minimum, generated a genuine issue of material fact that his myopia constitutes a disability within the meaning of the ADA.

### 1. The split in authority

However, district courts to consider the question of whether the disability inquiry should be made with or without regard to ameliorative treatments, and the corollary question of whether the EEOC's interpretive regulations properly resolve the matter, have split on the outcome. The City, citing one side of this split in its supplemental brief, asserts that EEOC regulations 29 C.F.R. Pt. 1630 App. § 1630.2(h) and (j) "are not true regulations, but are merely interpretive guidelines" that are not "on a par with the statutory language of the ADA itself." Supplemental Brief of Defendants, p. 2 (emphasis in the original). The City directs the court's attention to two district court decisions that have explicitly refused to follow the terms of the EEOC's interpretive guidelines. *See Schluter v. Industrial Coils, Inc.,* 928 F.Supp. 1437, 1445 (W.D.Wis.1996) (finding that the "EEOC's interpretation is in direct conflict with the language of the statute that requires plaintiffs in ADA cases to show that an impairment 'substantially limits' their lives"); *Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808, 812 (N.D.Tex.1994) (holding that the EEOC's interpretation that the plaintiff's limitation should be considered without regard to his use of insulin was "at odds" with the clear statutory language of the ADA which requires that a disability cause a substantial limitation).

In both *Schluter* and *Coghlan,* the courts were concerned that if a court did consider the ameliorative effects of medications or devices, such as eyeglasses, it would be reading out of the statute the requirement that the impairment "substantially limit" the plaintiff's life. *Schluter,* 928 F.Supp. at 1445;

*Coghlan,* 851 F.Supp. at 813. As the district court in *Schluter* observed,

> If an insulin-dependent diabetic can control her condition with the use of insulin or a near-sighted person can correct her vision with eyeglasses or contact lenses, she cannot argue that her life is substantially limited by her condition. To say that a person who needs insulin or eyeglasses is disabled in fact is to read out of the act's first definition of disability the requirement that it applies only to those persons who are "substantially limited" in major life activities.

*Schluter,* 928 F.Supp. at 1445. The City cites further authority it asserts weighs in favor of rejecting the EEOC's interpretive guidelines and considering only Sicard's corrected vision when deciding whether or not he is disabled within the meaning of the ADA. *See Ferguson v. Western Carolina Regional Sewer Auth.,* 914 F.Supp. 1297, 1299 (D.S.C.1996) (rejecting the plaintiff's argument, based on 29 C.F.R. Pt. 1630 App. § 1630.2(h)–(j), that her hypothyroidism, irritable bowel syndrome, and diverticulosis substantially impaired major life activities when untreated, instead pointing to regulations, including 29 C.F.R. Pt. 1630 App. § 1630.2(j), and cases requiring determination of "disability" on the basis of the effect of the impairment, not its diagnosis, and hence requiring individual determination; thus, there could be no "laundry list" of *per se* disabilities, and testimony of the plaintiff and the plaintiff's doctor indicated the conditions she complained of would have little effect on her daily activities or ability to work); *see also Venclauskas v. Connecticut Dep't of Pub. Safety,* 921 F.Supp. 78, 82 (D.Conn.1995) (even assuming the asserted disability, visual acuity, should be considered without regard to mitigating measures, as stated in the interpretive regulations, the plaintiff's visual "impairment," 20/80 vision in the unaided left eye and 20/120 in the unaided right eye, still was not "unusually severe or rare").

For his part, Sicard asserts that the EEOC's interpretive regulations are entitled to " 'substantial deference,' and 'must be given controlling weight unless [they are] plainly erroneous or inconsistent with the regula-

tion.'" Plaintiff's Supplemental Brief, pp. 4–5 (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994)). He identifies cases considering disability on the basis of untreated conditions, usually pursuant to the guidance of the EEOC interpretive regulations in question here. *See Canon v. Clark*, 883 F.Supp. 718, 721 (S.D.Fla.1995) (citing 29 C.F.R. Pt. 1630 App. § 1630.2(h) and, construing the plaintiff's claim in the light most favorable to the plaintiff on a motion to dismiss her ADA claim, holding that the plaintiff had stated an ADA claim, because, as alleged, her diabetes "forced [her] to rely on medical assistance to perform major life activities and to survive" and "she would lapse into a coma without insulin"); *Pater v. Deringer Mfg. Co.*, 1995 WL 530655, 4 A.D. Cas. (BNA) 1840 (N.D.Ill.1995) (not citing the EEOC interpretive regulations, but instead relying on cases finding diabetes, when not medicated, was "certainly disabling and life-limiting"); *Sarsycki v. United Parcel Serv.*, 862 F.Supp. 336, 340 (W.D.Okl.1994) (citing the regulations in question and holding that an insulin-dependent diabetic's undisputed evidence that without medication he would be unable to perform major life activities, because the disease caused loss of judgment, confusion, blackouts, comas, and possible death, and the condition was permanent, had established "disability" under the statute); *Finley v. Cowles Business Media*, 1994 WL 273336, 3 A.D.Cas. (BNA) 1108 (S.D.N.Y. 1994) (characterizing the regulations and comparable language from the legislative history as "stat[ing] that impairments that force an individual to rely on medical assistance to perform a major life activity, or merely to survive, should be considered disabled," and concluding that the plaintiff's chronic heart disease, if untreated, rose to the level of a disability under the ADA).

The only circuit court of appeals to comment on the regulations appears to have embraced them, although the determination in that case did not depend upon whether a treated or untreated condition was the measure of disability. *Roth*, 57 F.3d at 1454 (citing these regulations for the proposition that "[t]he determination of whether a condition constitutes an impairment, or the extent to which the impairment limits the individual's major life activities must be made without regard to the availability of mitigating measures such as medicines, or assistive or prosthetic devices"). Sicard also cites, however, cases from the district and appellate courts interpreting "disability" under the Rehabilitation Act in the same way as the ADA regulations in question here, that is, as requiring evaluation of an impairment without regard to mitigating treatment. *See Cook v. Rhode Island Dep't of Mental Health, Retardation, and Hosps.*, 10 F.3d 17, 24 (1st Cir. 1993) (on the evidence presented, "the jury reasonably could have found that, though people afflicted with morbid obesity can treat the manifestations of metabolic dysfunction by fasting or perennial undereating, the physical impairment itself—a dysfunctional metabolism—is permanent," and therefore sufficient to support a claim under the Rehabilitation Act); *Gilbert v. Frank*, 949 F.2d 637, 641 (2d Cir.1991) (finding that kidney disease, although controllable by weekly dialysis, constituted a handicap within the meaning of § 504 of the Rehabilitation Act); *Reynolds v. Brock*, 815 F.2d 571, 573 (9th Cir.1987) (holding that epilepsy, although controllable by medication, qualifies as a handicap under § 504 of the Rehabilitation Act); *Miles v. General Servs. Admin.*, 1995 WL 766013, 5 A.D. Cas. (BNA) 351 (E.D.Pa. 1995) ("[A]lthough controllable with medication, [the plaintiff's] diabetes, carpal tunnel syndrome and depression, which would otherwise substantially limit his ability to perform manual tasks and to work, render plaintiff 'handicapped'" within the meaning of the Rehabilitation Act); *Liff v. Secretary of Transp.*, 1994 WL 579912 (D.D.C.1994) (rejecting the defendant's argument "that because plaintiff's depression is generally controlled by medication, her impairment does not substantially limit any of her major life activities" because "Congress intended that the determination of whether an impairment substantially limits a major life activity is to be made without regard to medication").

What the court finds has not been satisfactorily defined in either the cases rejecting or embracing the EEOC's interpretive guidelines on this question is how much, if any,

deference is to be accorded the interpretive guidelines. The court therefore turns to that question.

### 2. Deference to agency regulations

 As this court recently observed in *Raymond S. v. Ramirez,* 918 F.Supp. 1280 (N.D.Iowa 1996), the degree of deference to be given the agency's interpretation depends upon what kind of rule or regulation states the interpretation. *Raymond S.,* 918 F.Supp. at 1291–92; *see also Snap–Drape, Inc. v. Comm'r of Internal Revenue,* 98 F.3d 194, 197 (5th Cir.1996) ("[T]he standard of review depends on whether the regulation is legislative or interpretive."). Agency interpretations of a statute the agency administers are to be given considerable deference. *See Connecticut Dep't of Income Maintenance v. Heckler,* 471 U.S. 524, 105 S.Ct. 2210, 85 L.Ed.2d 577 (1985) ("We have often noted that the interpretation of an agency charged with the administration of a statute is entitled to substantial deference," quoting *Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982)); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations"; footnote omitted); *Batterton v. Francis,* 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977) (where Congress "expressly *delegated* to the [agency] the power to prescribe standards for determining what constitutes 'unemployment' for the purposes of [the AFDC–UF statute] ... Congress entrusts to the [agency], rather than to the courts, the primary responsibility for interpreting the statutory term. In exercising that responsibility, the [agency] adopts regulations with legislative effect. A reviewing court is not free to set aside those regulations simply because it would have interpret-

ed the statute in a different manner"; emphasis in the original); *Norton v. Railroad Retirement Bd.,* 69 F.3d 282, 283 (8th Cir. 1995); *Shalala v. St. Paul–Ramsey Medical Ctr.,* 50 F.3d 522, 527 (8th Cir.1995); *Portland Residence, Inc. v. Steffen,* 34 F.3d 669, 673 (8th Cir.1994); *Miernicki v. Railroad Retirement Bd.,* 20 F.3d 354, 356 (8th Cir. 1994); *accord Snap–Drape,* 98 F.3d at 197 ("A legislative regulation is given controlling weight unless it is 'arbitrary, capricious, or manifestly contrary to the statute,' " quoted source omitted from advance sheets, but possibly *Chevron U.S.A., Inc.,* 467 U.S. at 844, 104 S.Ct. at 2782); *Ford v. Bernard Fineson Dev. Ctr.,* 81 F.3d 304, 309 (2d Cir.1996); *Puerto Rico Maritime Shipping Auth. v. Federal Maritime Comm'n,* 75 F.3d 63, 66 (1st Cir.1996); *Opie v. I.N.S.,* 66 F.3d 737, 739 (5th Cir.1995); *Elizabeth Blackwell Health Ctr. for Women v. Knoll,* 61 F.3d 170, 182 (3d Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 816, 133 L.Ed.2d 760 (1996); *Doolin Sec. Sav. Bank, F.S.B. v. F.D.I.C.,* 53 F.3d 1395, 1400 (4th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 473, 133 L.Ed.2d 402 (1995); *Employers Ins. of Wausau v. Browner,* 52 F.3d 656, 666 (7th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 699, 133 L.Ed.2d 656 (1996); *First American Bank v. Resolution Trust Corp.,* 30 F.3d 644, 646 (5th Cir.1994); *Katsis v. I.N.S.,* 997 F.2d 1067, 1069 (3d Cir.1993), *cert. denied,* 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994); *Kennedy v. Shalala,* 995 F.2d 28, 30 (4th Cir.1993); *Baum v. Madigan,* 979 F.2d 438, 443 (6th Cir.1992); *Fonseca–Leite v. I.N.S.,* 961 F.2d 60, 62 (5th Cir.1992); *Tolliver v. Xerox Corp.,* 918 F.2d 1052, 1057 (2d Cir. 1990), *cert. denied,* 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991); *Massachusetts Dep't of Educ. v. United States Dep't of Educ.,* 837 F.2d 536, 540 (1st Cir.1988); *Rybicki v. Hartley,* 792 F.2d 260, 262 (1st Cir. 1986). This deferential standard is afforded "legislative rules," which are interpretations of regulations that have been subjected to "notice-and-comment" procedures [6] prior to

---

**6.** The "notice-and-comment" procedures referred to are those found in the Administrative Procedures Act, 5 U.S.C. § 553. *Guernsey Memorial Hosp.,* — U.S. at —, 115 S.Ct. at 1234; *United States v. Garfinkel,* 29 F.3d 451, 458 (8th

Cir.1994). "The APA mandates not only that the agency make written findings describing the regulation's basis and purpose, 5 U.S.C. § 553(c), but it also mandates publication of and comment upon the proposed rule, *id.* § 553(b)(3), (c),"

their general adoption and publication. *Shalala v. Guernsey Memorial Hosp.,* 514 U.S. 87, ——, 115 S.Ct. 1232, 1239, 131 L.Ed.2d 106 (1995); *St. Paul–Ramsey Medical Ctr.,* 50 F.3d at 527 n. 4.

■ Courts must also generally give substantial deference to an agency's interpretation of its own regulations. *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994). Provided the agency's interpretation "does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Stinson v. United States,* 508 U.S. 36, 45, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)); *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 150, 111 S.Ct. 1171, 1176, 113 L.Ed.2d 117 (1991) ("in situations in which the meaning of regulatory language is not free from doubt, the reviewing court should give effect to the agency's interpretation so long as it is reasonable"; quotations and citations omitted); *Shalala v. St. Paul–Ramsey Medical Ctr.,* 50 F.3d 522, 529 (8th Cir.1995) ("the 'plainly erroneous' standards should be applied to the agency's interpretation where the meaning of the agency rule or regulation is ambiguous or in doubt"). The Eighth Circuit Court of Appeals has said that "[d]eference is due when an agency has developed its interpretation contemporaneously with the regulation, when the agency has consistently applied the regulation over time, and when the agency's interpretation is the result of thorough and reasoned consideration." *Sioux Valley Hosp. v. Bowen,* 792 F.2d 715, 719 (8th Cir. 1986). Thus, a court may not simply substitute its construction of a regulation for that of the agency even when it determines another interpretation is more reasonable. *See Miller v. United States,* 65 F.3d 687, 689 (8th Cir.1995).

■ However, "interpretive rules" by an agency that interpret *statutory* language are afforded less deference. *See, e.g., Ray-*

mond S., 918 F.Supp. at 1291; *see also Snap–Drape,* 98 F.3d at 197 ("An interpretive regulation ... is accorded less deference" than a legislative regulation). "Interpretive rules" have not been subjected to "notice-and-comment," but instead have been "'"issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers."'" *Guernsey Memorial Hosp.,* 514 U.S. ——, 115 S.Ct. at 1239 (quoting *Chrysler Corp. v. Brown,* 441 U.S. 281, 302 n. 31, 99 S.Ct. 1705, 1718 n. 31, 60 L.Ed.2d 208 (1979), in turn quoting the Attorney General's Manual on the Administrative Procedure Act 30 n. 3 (1947)). Such "interpretive rules" do not have the force and effect of law and "are not accorded that weight in the adjudicatory process." *Guernsey Memorial Hosp.,* 514 U.S. at ——, 115 S.Ct. at 1239; *St. Paul–Ramsey Medical Ctr.,* 50 F.3d at 527 n. 4; *Doe v. Reivitz,* 830 F.2d 1441, 1447 (7th Cir.1987). Although the courts may find such interpretations persuasive and treat them as if they were binding, the courts have the discretion to substitute their own judgment on all questions of statutory interpretation. *See Batterton,* 432 U.S. at 424–25 & n. 9, 97 S.Ct. at 2405 & n. 9 ("Ordinarily, administrative interpretations of statutory terms are given important but not controlling significance" and "a court is not required to give effect to an interpretative regulation."); *St. Paul–Ramsey Medical Ctr.,* 50 F.3d at 527 n. 4 (citing *Guernsey* 514 U.S. at ——, 115 S.Ct. at 1238); *accord Reivitz,* 830 F.2d at 1447 (citing 2 K. Davis, *Administrative Law Treatise* § 7.11, at 55 (1979)); *General Motors Corp. v. Ruckelshaus,* 724 F.2d 979, 985 & n. 30 (D.C.Cir. 1983) ("'[O]rdinarily, administrative interpretations are given important but not controlling significance,'" quoting *Batterton,* 432 U.S. at 424, 97 S.Ct. at 2405, and "[a] court always has the power to substitute its judgment for that of the agency in the case of an interpretative rule, even though courts customarily accord some measure of deference to an agency's interpretation of a statute for which it has been assigned the responsibility for enforcement," citing, *inter alia, Batterton,* 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9). The preliminary power of interpretation

prior to the adoption of the agency's interpreta- tion. *Garfinkel,* 29 F.3d at 458.

is in the agency, but the final power of interpretation is in the courts. *St. Paul–Ramsey Medical Ctr.*, 50 F.3d at 527 n. 4. Of course, the interpretation of a statutory term by an agency charged with administering the statute " 'do[es] constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' " *Id.* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)).

■ Most recently, the Supreme Court upheld an interpretation by the Bureau of Prisons (BOP) of the statutory language "official detention" in 18 U.S.C. § 3585(b), which the Court found presented the "most natural and reasonable reading of § 3585(b)'s 'official detention' language,' " observing as follows:

It is true that the Bureau's interpretation appears only in a "Program Statement"— an internal agency guideline—rather than in "published regulations subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment." [*Koray v. Sizer*,] 21 F.3d [558,] 562 [ (3d Cir.1994) (decision below) ]. But BOP's internal agency guideline, *which is akin to an "interpretive rule" that "do[es] not require notice-and-comment," Shalala v. Guernsey Memorial Hospital*, 514 U.S. ——, ——, 115 S.Ct. 1232, 1239, 131 L.Ed.2d 106 (1995), *is still entitled to some deference, cf. Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157, 111 S.Ct. 1171, 1179, 113 L.Ed.2d 117 (1991), *since it is a "permissible construction of the statute." Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

*Reno v. Koray*, —— U.S. ——, ——, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995) (emphasis added). Thus, even internal agency guidelines that are only "akin" to "interpretive rules" are entitled to some deference in their interpretation of statutory language, at least where the agency's interpretation is "the most natural and reasonable reading" of the statute or a "permissible construction of the statute." *Id.; accord Snap–Drape*, 98 F.3d at 197 (although an interpretive regulation is accorded less deference than a legislative regulation, it "is nevertheless valid if it is a reasonable interpretation of the statute and if it 'harmonizes with the plain language of the statute, its origin, and its purpose,' " quoted source omitted from advance sheets, but possibly *National Muffler Dealers Ass'n v. United States*, 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979)).

■ The Eighth Circuit Court of Appeals has suggested that the weight to be given to an agency interpretation in an "interpretive rule" depends on many factors, including the validity of its reasoning, its consistency with earlier and later agency pronouncements, and whether the administrative document was issued contemporaneously with the passage of the statute being interpreted. *St. Paul–Ramsey Medical Ctr.*, 50 F.3d at 527 n. 4; *accord Batterton*, 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9 ("Varying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise," citing *General Electric Co. v. Gilbert*, 429 U.S. 125, 141–45, 97 S.Ct. 401, 410–13, 50 L.Ed.2d 343 (1976); *Morton, infra*; and *Skidmore, infra* ); *Morton v. Ruiz*, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974); *Skidmore*, 323 U.S. at 140, 65 S.Ct. at 164. Whatever deference might be due an agency interpretive regulation as a general matter, however, "of course, no deference is due to agency interpretations at odds with the plain language of the statute itself. Even contemporaneous and longstanding agency interpretations must fall to the extent they conflict with statutory language." *Ohio Pub. Employees Retirement Sys. v. Betts*, 492 U.S. 158, 171, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989).

### 3. *The degree of deference to be accorded here*

■ The court concludes that the EEOC's interpretive regulations found in 29 C.F.R. Pt. 1630, App. § 1630.2(h) and (j), which direct that the determination of whether an impairment substantially limits a major life activity is to be made without regard to mitigating treatments or assistive devices, are entitled to substantial deference. First, as with the BOP's interpretation in *Koray*,

the EEOC's interpretation of "a mental or physical impairment that substantially limits one or more of the major life activities of such individual," 42 U.S.C. § 12102(2), as requiring a determination without regard to mitigating measures is the "most natural and reasonable reading of [the statute]," and hence is certainly a "permissible construction of the statute." *Koray,* — U.S. —, —, 115 S.Ct. 2021, 2027; *accord Snap–Drape,* 98 F.3d at 197.[7] The statute certainly does not say "impairment plus treatment" or "impairment after treatment" or "treated impairment"; it just says "impairment." The plain meaning of "impairment" is only the *untreated* condition. The EEOC's interpretive regulations simply reflect that plain meaning of the word "impairment."

Furthermore, the EEOC's interpretation does not read "substantially limits" out of the statute. *Contra Schluter,* 928 F.Supp. at 1445; *Coghlan,* 851 F.Supp. at 813. Rather, it places "substantially limits" in proper relation to the impairment, that is, it relates "substantially limits" to the *untreated* impairment. The trier of fact must still decide whether the untreated impairment "substantially limits" any major life activity before the untreated impairment constitutes a "disability" within the meaning of the ADA. For example, courts have held that untreated vi-

sual limitations may nonetheless be insufficient to constitute "disabilities" under the ADA, because the visual limitations do not substantially limit any major life activity. *See, e.g., Venclauskas,* 921 F.Supp. at 82 (even assuming the asserted disability, visual acuity, should be considered without regard to mitigating measures, as stated in the interpretive regulations, the plaintiff's visual "impairment," 20/80 vision in the unaided left eye and 20/120 in the unaided right eye, still was not "unusually severe or rare").

The interpretive regulations here are also entitled to deference when the court considers other factors, including the validity of their reasoning, their consistency with earlier and later agency pronouncements, and whether they were issued contemporaneously with the passage of the statute being interpreted. *St. Paul–Ramsey Medical Ctr.,* 50 F.3d at 527 n. 4; *accord Batterton,* 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9 ("Varying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise."); *Morton,* 415 U.S. at 237, 94 S.Ct. at 1075; *Skidmore,* 323 U.S. at 140, 65 S.Ct. at 164. First, the interpretive regulations are nearly contemporaneous with the passage of

---

**7.** The emphasis in *Koray* on whether the interpretive regulation provides the most natural and reasonable reading of a statute is in accord with the principal canon of statutory interpretation, the "plain meaning" rule. "The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *United States ex rel. Harlan v. Bacon,* 21 F.3d 209, 210 (8th Cir.1994) ("When construing a statute, we are obliged to look first to the plain meaning of the words employed by the legislature," and the court "must give effect to the unambiguously expressed intent of Congress," citing *Chevron* ); *United States v. Manthei,* 979 F.2d 124, 126 (8th Cir. 1992) ("When interpreting statutory language, the court must first look to the plain meaning of the language," citing *North Dakota v. United States,* 460 U.S. 300, 312–13, 103 S.Ct. 1095, 1102–03, 75 L.Ed.2d 77 (1983)). The Supreme Court describes this rule as the "one, cardinal canon before all others." *Connecticut Nat'l Bank*

*v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Thus, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* (citing, *Ron Pair,* 489 U.S. at 241–242, 109 S.Ct. at 1030–31; *United States v. Goldenberg,* 168 U.S. 95, 102–03, 18 S.Ct. 3, 4, 42 L.Ed. 394 (1897); *Oneale v. Thornton,* 6 Cranch 53, 68, 3 L.Ed. 150 (1810)). When the language of the statute is plain, the inquiry also ends with the language of the statute, for in such instances "the sole function of the courts is to enforce [the statute] according to its terms." *Ron Pair,* 489 U.S. at 241, 109 S.Ct. at 1030 (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)); *Melahn v. Pennock Ins., Inc.,* 965 F.2d 1497, 1502 (8th Cir.1992) (plain meaning of a statute governs over ambiguous legislative history, citing *Ron Pair Enterprises* ). As I recently observed in another case involving statutory interpretation, "Judicial fathoming of Congressional intent is often a treacherous voyage. That is not so here." *Furrer v. Brown,* 62 F.3d 1092, 1102 (8th Cir. 1995) (Bennett, District Judge, concurring), *cert. denied,* — U.S. —, 116 S.Ct. 1567, 134 L.Ed.2d 667 (1996).

the statute and have not changed since they were promulgated. *Id.*

Second, considering the reasoning behind the EEOC's interpretation of the statute as requiring consideration of the untreated impairment, *see, e.g., St. Paul–Ramsey Medical Ctr.,* 50 F.3d at 527 n. 4 (the court should consider the validity of the reasoning behind the agency's interpretation), the court finds that the regulations are expressly founded directly on the statute's legislative history. For example, 29 C.F.R. Pt. 1630 App. § 1630.2(h) states as follows:

> The existence of an impairment is to be determined without regard to mitigating measures such as medicines, or assistive or prosthetic devices. *See* Senate Report [No. 116, 101st Cong., 1st Sess. 21,] 23 [ (1989) ], House Labor Report [No. 485 part 2, 101st Cong.2d Sess. 50,] 52 [ (1990) ], House Judiciary Report [No. 485 part 3, 101st Cong., 2d Sess. 26,] 28 [ (1990) ].

29 C.F.R. Pt. 1630, App. § 1630.2(h). The EEOC's interpretive regulations not only rely upon the legislative history, but directly mimic the language of the House and Senate Reports in formulating the EEOC's interpretation of the statutory language.

No less than three congressional reports make specific reference to the fact that the disability inquiry is to be made without regard to the ameliorative effects of medication or prosthetic devices. *See* H.R.Rep. No. 101–485(II), 101st Cong., 2nd Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 303; H.R.Rep. No. 101–485(III), 101st Cong., 2nd Sess.1990, *reprinted in* 1990 U.S.C.C.A.N. 445; S.R. No. 101–116, 101st Cong., 1st Sess. 1989, *reprinted in* A & P S.Rep. 101–116. As House Report No. 101–485(II) clearly states,

> Whether a person has a disability should be assessed without regard to the availability of mitigating measures, such as reasonable accommodations or auxiliary aids. For example, a person who is hard of hearing is substantially limited in the major life activity of hearing, even though the loss may be corrected through the use of a hearing aid. Likewise, persons with impairments, such as epilepsy or diabetes,

which substantially limit a major life activity are covered under the first prong of the definition of disability, even if the effects of the impairment are controlled by medication.

H.R.Rep. No. 101–485(II) at 52, U.S.Code Cong. & Admin.News 1990, p. 334. Similarly, House Report No. 101–485(III) states,

> The impairment should be assessed without considering whether mitigating measures, such as auxiliary aids or reasonable accommodations, would result in a less-than-substantial limitation. For example, a person with epilepsy, an impairment which substantially limits a major life activity, is covered under this test, even if the effects of the impairment which substantially limits a major life activity, is also covered, even if the hearing loss is corrected by the use of a hearing aid.

H.R.Rep. No. 101–485(III) at 28, U.S.Code Cong. & Admin.News 1990, p. 451. Likewise, Senate Report 101–116 provides that the disability inquiry is to be made without regard to the ameliorative effects of medication or prosthetic devices: "[W]hether a person has a disability should be assessed without regard to the availability of mitigating measures, such as reasonable accommodations or auxiliary aids." S.Rep. No. 101–116 at 23.

The City contends that this court should not even consider this legislative history unless the court first determines that "substantially limits" is somehow ambiguous, which the City contends it is not. The court is not persuaded by this argument. First, although, under normal canons of statutory interpretation, the court would be able to take recourse to legislative history only after determining that the statutory language is ambiguous, *see, e.g., Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 808 n. 3, 109 S.Ct. 1500, 1504 n. 3, 103 L.Ed.2d 891 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute."); *Northern States Power Co. v. United States,* 73 F.3d 764, 766 (8th Cir.) ("We think that when, as here, the statutes are straightforward and clear, legislative history and policy arguments are at best interesting, at worst distracting and misleading, and in neither

case authoritative."), *cert. denied*, —— U.S. ——, 117 S.Ct. 168, 136 L.Ed.2d 110 (1996); *United States v. Field*, 62 F.3d 246, 249 (8th Cir.1995) (when the statutory language is not ambiguous, there is "no need to search for clues to Congress' intent in the legislative history"), it is not "substantially limits" that must be ambiguous here. Instead, as the court suggested above, it is "impairment" that would have to be ambiguous, because the dispute is whether the statute means a treated or untreated "impairment" when it requires that the "impairment" "substantially limit[ ]" some major life activity. To the extent that "impairment" is ambiguous, the legislative history considered here dispels that ambiguity, demonstrating conclusively that Congress intended "impairment" to mean *untreated* impairment. Consulting legislative history here therefore is no "distraction," but a clear confirmation of this court's and the agency's reading of the statute. *Cf. Northern States Power Co.*, 73 F.3d at 766. Second, the court has not consulted legislative history to interpret the statute; the court has consulted the legislative history, because that is the basis for the *agency's* interpretation, and the court is to evaluate the reasoning behind the agency's interpretation to determine how much deference to give that agency interpretation. *St. Paul–Ramsey Medical Ctr.*, 50 F.3d at 527 n. 4 (the court should consider the validity of the reasoning behind the agency's interpretation). Again, the court finds that the agency's reliance on clear congressional statements in the legislative history to be a sound basis for the agency's interpretation.

Other courts, including our own circuit court of appeals, have accorded the EEOC's interpretive guidelines considerable deference, indeed, almost controlling authority, when interpreting the ADA. *See, e.g., Webb*, 94 F.3d at 487 (quoting 29 C.F.R. Pt. 1630 App. § 1630.2(j) as establishing that an individual is disabled when her impairment merely prevents performance of a certain class of jobs); *accord Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir.1996) (relying on a review of "the ADA, its regulations, and the EEOC's interpretive guidance" to conclude that the ADA may require an employer to reassign a disabled employee to a different position as a reasonable accommodation where the employee can no longer perform the essential functions of his or her current position); *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 164 (5th Cir.1996) (relying on the interpretive guidelines to the ADA as establishing the proposition that, while a given disability may limit one employee, it may not so limit another), *petition for cert. filed*, 65 U.S.L.W. 3354 (Oct. 23, 1996); *Bridges v. City of Bossier*, 92 F.3d 329, 336 n. 11 (5th Cir.1996) (relying on the omission of hemophilia from a list of per se disabilities in 29 C.F.R. Pt. 1630 App. § 1630.2(j) "combined with the focus on individualized assessments" as leading the court to the conclusion that hemophilia is not a disability per se under the ADA); *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 672 (1st Cir.1995) ("We have looked to [the EEOC published appendix to the regulations for the ADA] in interpreting the ADA," and relying on them again to establish the proper scope of pre-employment inquiry concerning disabilities); *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir.1995) ("The interpretive guidelines for the ADA reinforce the conclusion that reasonable accommodation does not include unscheduled paid leave," citing 29 C.F.R. Pt. 1630 App. § 1630.2(o)); *Carparts Distrib. Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 16 (1st Cir. 1994) (looking to the ADA interpretive guidelines to assist in determining the proper meaning of "employer" under the ADA); *and compare United States E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1284 (7th Cir.1995) (rejecting the EEOC's reliance on its interpretive guidelines as inapposite to the question before the court, not because they were not otherwise persuasive). Thus, the court concludes that there are no sound reasons for disregarding the agency's interpretation of "a mental or physical impairment that substantially limits one or more of the major life activities of such individual," 42 U.S.C. § 12102(2), as meaning the impairment without regard to the availability of mitigating measures, such as medicines or assistive or prosthetic devices. Furthermore, because the agency's interpretation is the most natural and reasonable reading of the statute, *Koray*, —— U.S. ——, ——, 115

S.Ct. 2021, 2027; *accord Snap–Drape*, 98 F.3d at 197, this court will follow it.

### C. Sicard's "Disability"

■ Because the court concludes that, under the ADA, a plaintiff's "disability" must be considered in light of the plaintiff's untreated impairment, the court must now consider whether Sicard has generated a genuine issue of material fact as to whether his untreated visual impairment substantially limits any of his major life activities, or whether the City is entitled to summary judgment on the ground that Sicard is not "disabled" within the meaning of the ADA. The court finds that Sicard has generated such a genuine issue of material fact.

The record supports a reasonable inference that Sicard is quite incapacitated without corrective lenses. The uncontroverted record before the court indicates that Sicard's uncorrected vision is 20/200 in each eye. In this uncorrected state, Sicard has put forward evidence that his vision prevents him from performing any of the functions of the firefighter position he seeks with the City. Indeed, the City based its rejection of his application on his uncorrected vision. There are also few jobs Sicard could perform with his uncorrected vision without extensive retraining. Clearly, Sicard's uncorrected vision substantially limits the major life activity of working. *See Webb*, 94 F.3d at 487 (a person is substantially limited in the major life activity of working if she is "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities,'" quoting 29 C.F.R. § 1630.2(j)(3)(i)). Additionally, without correction, Sicard cannot drive an automobile or read. His uncorrected vision also prevents him from seeing well enough to walk in unfamiliar settings or to read street signs. Sicard's uncorrected vision would also prevent him from watching television or movies. Thus, Sicard may be substantially limited in the more general "major life activities" of "seeing" and "walking." 29 C.F.R. § 1630.2(i).

■ Therefore, on the record before the court, the court concludes that a material fact issue has been generated as to whether Sicard's myopia constitutes a disability. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (an issue of fact is material if it might affect the outcome of the suit under governing law); *Hartnagel*, 953 F.2d at 394 (an issue of material fact is genuine if it has a real basis in the record). Having found that a material fact issue has been generated on the only issue raised in the City's motion for summary judgment, the City's motion for summary judgment is denied.[8]

### V. CONCLUSION

The court concludes that, as the EEOC's interpretive regulations state, the disability inquiry under the ADA should be made without regard to the ameliorative effects of medication or prosthetic devices. The agency's interpretive regulations are entitled to considerable deference in this case, because they reflect the most natural and reasonable reading of the plain language of the statute.

8. The court notes that the City did not move for summary judgment on the ground that Sicard is unqualified for the position of firefighter because of his eyesight. Sicard has come forward with evidence that he is able to perform the position of firefighter with some accommodation for his eyesight. Sicard has presented evidence that N.F.P.A. 1582, *Standard on Medical Requirements for Fire Fighters*, is the most current standard for firefighters and that this standard has been adopted by fire fighting organizations throughout the United States and that this standard would permit him to qualify as a firefighter. He has also put forward evidence that he is performing the duties of a firefighter effectively for the Westwood Fire Department. As the Eighth Circuit Court of Appeals has pointed out, the employer bears a special burden of production when the employer disputes the evidence that an employee can perform the essential functions of the job in question. *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1113 (8th Cir.1995). In such a situation, the employer must come forward with some evidence of what those "essential functions" are. *Id.* Although the employee retains the burden of persuasion at all times that he or she can *perform* the essential functions of the job, with or without accommodation, the reason the employer must come forward with evidence of the essential functions of a job is that "much of the information which determines those essential functions lies uniquely with the employer." *Id.*

Furthermore, the agency's interpretive regulations were promulgated approximately contemporaneously with the statute and reflect the agency's consistent interpretation. Finally, the reasoning behind the interpretive regulations is sound, because the regulations are founded on, and indeed mimic, the language of the congressional reports on the statute at the time of its passage. On the record presented here, the court also concludes that Sicard has generated a genuine issue of material fact that his uncorrected vision substantially limits major life activities. Therefore, Sicard has generated a genuine issue of material fact as to whether he is "disabled" within the meaning of the ADA.

The City's Renewed Motion for Summary Judgment is **denied.**

**IT IS SO ORDERED.**